IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–00903–EWN–BNB

JAMES W. RAFFERTY,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a tax case. Plaintiff James W. Rafferty alleges that he is entitled to a refund for taxes he allegedly overpaid as a result of Defendant's disallowance of a spousal support deduction on his 1993 tax return. This matter is before the court on "Plaintiff's Motion for Summary Judgment," filed February 21, 2008, and "United States' Motion for Summary Judgment," filed February 29, 2008. Jurisdiction is proper pursuant to 28 U.S.C. § 1346(a)(1).

**FACTS**

*1. Factual Background*

On December 26, 1975, Plaintiff and Kathryn Morgan were married. (Pl.'s Mot. for Summ. J. [hereinafter "Pl.'s Br."], Statement of Undisputed Material Facts [hereinafter "SOF"] ¶ 1 [filed Feb. 21, 2008]; *admitted at* United States' Resp. to Pl.'s Mot. for Summ. J. [hereinafter "Def.'s Resp."], Resp. to Statement of Undisputed Material Facts [hereinafter "RSOF"] ¶ 1 [filed

Mar. 6, 2008].) On November 18, 1992, Plaintiff and Ms. Morgan permanently separated. (*Id.*, SOF ¶ 3; *admitted at* Def.'s Resp., RSOF ¶ 3.) At the time of their separation, Plaintiff and Ms. Morgan had three minor children. (*Id.*, SOF ¶ 4; *admitted at* Def.'s Resp., RSOF ¶ 4.) During the 1993 calendar year, Plaintiff and Ms. Morgan did not reside in the same household. (*Id.*, SOF ¶ 5; *admitted at* Def.'s Resp., RSOF ¶ 5.)

During 1992 and part of 1993, Plaintiff worked at a company called Media Vision. (*Id.*, SOF ¶ 6; *admitted at* Def.'s Resp., RSOF ¶ 6.) Plaintiff transferred some of his income from this job to Ms. Morgan, but the parties disagree about how much income was transferred, and the manner in which this transfer was accomplished. (*Compare id.*, SOF ¶ 7, *with* Def.'s Resp., RSOF ¶ 7.) In his deposition, Plaintiff testified that he paid Ms. Morgan approximately seventy thousand dollars in 1993 by giving her his paychecks from work, which she would deposit into a joint banking account. (*Id.*, Ex. 5 at 8–9 [Rafferty Dep.].) Specifically, Plaintiff testified that he gave Ms. Morgan paychecks from November 1992 until sometime in the summer of 1993, when he lost his job with Media Vision. (*Id.*, Ex. 5 at 3 [Rafferty Dep.].) Plaintiff recalled that he lost his job in July or August of 1993, but may have received "a month or two" of continuing pay beyond his termination date. (*Id.*) Plaintiff admits that he does not have any documentation showing the amount of money he allegedly paid his wife, explaining: "I don't — no, I don't have access to [Ms. Morgan's] bank account." (*Id.*, Ex. 5 at 9 [Rafferty Dep.].) Ms. Morgan, by contrast, testified that she could not remember receiving any payments from Plaintiff for family support during 1993, but nonetheless represented in a July 1993 court filing relating to their ongoing divorce proceedings that: "[Plaintiff] provided ample support to the children and myself

through May 1, 1993. He had simply been giving me his paychecks and I had been paying all the bills. We basically continued to operate as a community." (*Id.*, Ex. 6 at 9–10 [Morgan Dep.], Ex. 7 at 6 [7/2/93 Filing].)

Throughout 1993, Plaintiff and Ms. Morgan negotiated through their attorneys regarding the dissolution of their marriage. (*Id.*, SOF ¶ 10; *admitted at* Def.'s Resp., RSOF ¶ 10.) On October 15, 1993, a California state court entered a temporary order reciting, *inter alia*, that "[t]here shall be no payment of child or spousal support at this time." (United States' Mot. for Summ. J. [hereinafter "Def.'s Br."], Ex. A-4 at 4 [10/15/93 Order] [filed Feb. 29, 2008].) On March 24, 1994, Plaintiff and Ms. Morgan were divorced. (*Id.*, Statement of Undisputed Material Facts [hereinafter "SOF"] ¶ 2; *admitted at* Pl.'s Opp'n to Mot. for Summ. J. [hereinafter "Pl.'s Resp."], Resp. to Statement of Undisputed Facts [hereinafter "RSOF"] ¶ 2 [filed Mar. 14, 2008].)

On June 17, 1994, Plaintiff and Ms. Morgan entered into a Marital and Property Settlement Agreement ("Settlement Agreement") which was approved by a California state court and incorporated into a judgment on July 6, 1994. (*Id.*, SOF ¶ 3; *admitted at* Pl.'s Resp., RSOF ¶ 3.) The Settlement Agreement included a provision stating: "[A]ll sums paid by [Plaintiff] to [Ms. Morgan] during the tax year 1993 . . . shall be deemed family support, with [Ms. Morgan] to include all such payments in declaring her gross income on her federal and state tax returns and [Plaintiff] deducting all such payments on his federal and state income tax returns." (*Id.*, SOF ¶ 4; *admitted at* Pl's Resp., RSOF ¶ 4.) Plaintiff claims that this provision reflected the terms of a prior written agreement between himself and Ms. Morgan executed in March or April

of 1993.  (*Id.*, Ex. A-1 at 13 [Rafferty Dep.]; Pl.'s Br., Ex. 5 at 8 [Rafferty Dep.].)  Nonetheless, Plaintiff acknowledges that he has no documentary evidence of this alleged prior written agreement, except for its "reiteration" in the Settlement Agreement.  (Pl.'s Br., Ex. 5 at 9 [Rafferty Dep.].)  Ms. Morgan testified that she was not aware of any orders or agreements with respect to spousal support which predated the California state court's October 15, 1993, order.  (Def.'s Br., Ex. A-2 at 9–10 [Morgan Dep.].)

In July 2002, Plaintiff filed his 1993 federal income tax return.  (Pl.'s Br., SOF ¶ 21; *admitted at* Def.'s Resp., RSOF ¶ 21.)  Pursuant to the Settlement Agreement, Plaintiff deducted $70,963 from this return.  (*Id.*, SOF ¶ 19; *admitted at* Def.'s Resp., RSOF ¶ 19.)  The Internal Revenue Service ("IRS") disallowed this deduction, but accepted the remainder of Plaintiff's 1993 tax return as filed.  (*Id.*, SOF ¶ 22; *admitted at* Def.'s Resp., RSOF ¶ 22.)  Plaintiff paid the liability assessed by the IRS for the 1993 tax year in full.  (*Id.*, SOF ¶ 23; *admitted at* Def.'s Resp., RSOF ¶ 23.)  Plaintiff acknowledges that he has no documentary evidence that Ms. Morgan reported any of his alleged payments to her of approximately seventy thousand dollars in her 1993 tax return, and Ms. Morgan testified that she could not remember what she reported in this return.  (*Id.*, Ex. 5 at 10 [Rafferty Dep.]; Def.'s Br., Ex. A-2 at 7 [Morgan Dep.].)

### 2. *Procedural History*

On May 1, 2007, Plaintiff filed a complaint in this court.  (Compl. [filed May 1, 2007].) On May 4, 2007, Plaintiff filed an amended complaint, arguing that the IRS's disallowance of his $70,963 deduction from his 1993 tax return was erroneous because: (1) "[it] resulted in double-taxation with both Plaintiff and [Ms. Morgan] paying income taxes on the $70,963.00;"

and (2) irrespective of whether Ms. Morgan included this amount in her gross income, "Plaintiff [was] entitled to the $70,963.00 deduction as spousal support." (Am. Compl. ¶¶ 15–16 [filed May 4, 2007] [hereinafter "Am. Compl."].) Plaintiff seeks a refund of $24,594, which he claims is his erroneous tax liability on the disallowed deduction. (*See id.* ¶ 24.)

On February 21, 2008, Plaintiff moved for summary judgment, arguing that he had conclusively established his $70,963 payment to Ms. Morgan, and his entitlement to a spousal support deduction. (Pl.'s Br. at 6–13.) On March 6, 2008, Defendant responded. (Def.'s Resp.) Plaintiff did not reply.

On February 29, 2008, Defendant moved for summary judgment, arguing that Plaintiff could not: (1) substantiate the amount of his alleged spousal support payments to Ms. Morgan; (2) prove that such payments were made "under" a divorce or separation agreement; or (3) show any equitable entitlement to a refund under his theory of double-taxation. (Def.'s Br. at 7–14.) On March 14, 2008, Plaintiff responded. (Pl.'s Resp.) On March 27, 2008, Defendant replied. (United States' Reply to Pl.'s Opp'n to Mot. for Summ. J. [filed Mar. 27, 2008] [hereinafter "Def.'s Reply."].) These matters are ripe for review.

**ANALYSIS**

*1.    Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008); *see Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e)(2) (2008). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

*2.  Evaluation*

"In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." *United States v. Janis*, 428 U.S. 433, 440 (1976). "[T]he taxpayer must present evidence to overcome the presumptive correctness of the [IRS's] assessment." *Central Motor Co. v. United States*, 583 F.2d 470, 476 (10th Cir. 1978). In addition, the Tenth Circuit has

recognized that the taxpayer bears the burden of not only showing that a tax assessment was invalid, but that his evidence establishes the proper amount of his liability. *See Austin v. United States*, 461 F.2d 733, 737 (10th Cir. 1972).

In the instant case, the parties dispute: (1) whether Plaintiff can or has established the amount of his alleged payments to Ms. Morgan in spousal support; (2) whether this amount, even if established, is deductible; and (3) whether Plaintiff's theory regarding double-taxation has legal or factual support. (*See* Pl.'s Br.; Def.'s Br.) After recounting the law pertaining to spousal support deductions, I address each of these issues in turn.

### a. *Spousal Support Deductions*

Title 26, section 215(a) of the United States Code states: "In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year." 26 U.S.C. § 215(a) (2006). "Alimony or separate maintenance payments" are defined to mean "any payment in cash if:"

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

26 U.S.C. § 71(b)(1)(A)–(D) (2006). "Divorce or separation instrument" is defined as:

        (A)     a decree of divorce or separate maintenance or a written instrument incident to such a decree,
        (B)     a written separation agreement, or
        (C)     a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

*Id.* § 71(b)(2)(A)–(C). The statute provides that the spousal support deduction does not apply to payments "for the support of children of the payor spouse." *Id*. § 71(c)(1).

### b. *Whether Plaintiff Can or Has Established the Amount of His Alleged Spousal Support Payments to Ms. Morgan*

The parties first dispute whether Plaintiff can or has established the amount of his alleged spousal support payments to Ms. Morgan. Defendant argues that Plaintiff has not adduced any competent evidence such as W-2s or earning statements substantiating his claim that he received $70,963 from Media Vision in 1993, which he claims he paid to Ms. Morgan in support. (*See* Def.'s Br. at 8–9.) Defendant also argues that Ms. Morgan's characterization of her arrangement with Plaintiff as "operat[ing] as a community" precludes the finding that such payments, in whatever amount they were made, constituted spousal support. (*Id.* at 7–9.)

In response, Plaintiff points to: (1) his own deposition testimony reciting that he paid $70,963 in spousal support to Ms. Morgan; and (2) three pay stubs from December 22, 1992, January 7, 1993, and January 21, 1993, showing net payments from Media Vision in the amounts of $4,540.28, $3,226.81, and $3,707.58, respectively. (*See* Pl.'s Br., SOF ¶ 18; Def.'s Br., Ex. A-3 at 13 [Pay Stubs].) For the following reasons, I find that neither party has established whether Plaintiff did or did not pay $70,963 in spousal support to Ms. Morgan in 1993.

With respect to Defendant's motion for summary judgment, the facts viewed in the light most favorable to Plaintiff arguably support his assertion that he paid $70,963 in spousal support. The undisputed evidence shows that Plaintiff received $6,934.39 from Media Vision in January 1993, and a reasonable fact-finder could infer from this evidence that Plaintiff received roughly the same amount each month until his termination from the company in July or August 1993. (*See* Def.'s Br., Ex. A-3 at 13 [Pay Stubs].) Moreover, because Plaintiff testified that he may have received compensation for "a month or two" beyond his termination date, a reasonable fact-finder also could find that he placed his paychecks into his joint banking account with Ms. Morgan for approximately ten months in 1993. (*See id.*, Ex. 5 at 3 [Rafferty Dep.].) Accordingly, a reasonable fact-finder could believe that Plaintiff deposited $70,963 into his joint banking account with Ms. Morgan in 1993. Moreover, the facts that Ms. Morgan claims that Plaintiff ceased depositing paychecks into their joint account in May 1993, and that she characterizes her arrangement with Plaintiff as "operat[ing] as a community," merely highlights the factual dispute regarding when Plaintiff's payments ceased, but fails disprove that such payments constituted spousal support as a matter of law because Defendant has cited no law so suggesting. (*Id.*, Ex. 7 at 6 [7/2/93 Filing]; *see also* Def.'s Br. at 8.) Accordingly, based on the foregoing, I find that Defendant has failed to prove that Plaintiff did not pay $70,963 in spousal support to Ms. Morgan in 1993.

With respect Plaintiff's motion for summary judgment, the facts viewed in the light most favorable to Defendant arguably support its assertion that Plaintiff did not pay $70,963 in spousal support to Ms. Morgan in 1993. If the fact-finder believes Ms. Morgan's representation

that Plaintiff ceased payments into their joint banking account in May 1993, or disbelieves Plaintiff's testimony that he received payments from Media Vision until October 1993, or chooses not to infer that Plaintiff's January 1993 income was representative of his monthly income throughout 1993, then the fact-finder could reasonably disbelieve Plaintiff's testimony that he deposited $70,963 into his joint account with Ms. Morgan. (*See, e.g.*, Pl.'s Br., Ex. 5 at 3 [Rafferty Dep.], Ex. 7 at 6 [7/2/93 Filing]; Def.'s Br., Ex. A-3 at 13 [Pay Stubs].) Accordingly, whether or not such payments constituted spousal support under law which neither party addressed, the fact-finder could reasonably conclude that Plaintiff did not pay $70,963 in such support to Ms. Morgan in 1993. Based on the foregoing, I find that Plaintiff has failed to prove as a matter of law he paid $70,963 to Ms. Morgan in spousal support.

   *c. Whether the Amount of Plaintiff's Alleged Support Payments to Ms. Morgan, Even If Established, Is Deductible*

Defendant next argues that, even assuming Plaintiff can establish payment of $70,963 in spousal support to Ms. Morgan, he cannot prove that such payment was made "under" a divorce or separation agreement because he deposited his paychecks into the joint banking account nearly a year before the execution of the Settlement Agreement or its incorporation into a judgment by the California state court. (Def.'s Br. at 9–11; Def.'s Resp. at 7–11; Def.'s Reply at 5–10.) For the following reasons, I agree.

As indicated above, "[a]limony or separate maintenance payments" deductible under the Internal Revenue Code are defined as "any payment in cash" if, *inter alia*, "such payment is received by (or on behalf of) a spouse under a divorce or separation instrument." 26 U.S.C. §

71(b)(1)(A) (2006). "Divorce or separation instrument[s]" are defined to include "a decree of divorce or separate maintenance or a written instrument incident to such a decree." *Id.* § 71(b)(2)(A). Tax courts interpreting this statute have held that: (1) "payments made before the existence of a written divorce or separation instrument are not deductible by the payor spouse under section 215;" and (2) the retroactive deeming of payments as family support by state courts does not meet the requirements of section 71(b)(1)(A). *See Ali v. Commissioner*, T.C.M. (RIA) 2004–284 (2004); *see also Gordon v. Commissioner*, 70 T.C. 525, 530 (1978) ("[R]etroactive judicial determinations cannot cure defects in alimony arrangements under the Federal taxing statute, such as the absence of a written instrument at the time the payments were made.").

In the instant case, Plaintiff argues that section 71(b)(1)(A) is satisfied because the Settlement Agreement "reflected" the terms of a prior written agreement between himself and Ms. Morgan regarding spousal support. (Pl.'s Resp. at 8–13.) Somewhat inconsistently, Plaintiff also cites various case law purporting to show that section 71(b)(1)(A)'s requirement of payments under a written instrument is flexible. (*Id.*; *see also* Pl.'s Br. at 11–12.) For the following reasons, I am not persuaded.

First, Plaintiff acknowledges that he has no documentary evidence of the alleged prior written agreement between himself and Ms. Morgan except for the "reiteration" of this agreement in the Settlement Agreement. (Pl.'s Br., Ex. 5 at 9 [Rafferty Dep.].) By contrast, Defendant cites ample evidence suggesting that no such agreement existed. (*See* Def.'s Reply at 5–8.) For instance, Defendant points to Ms. Morgan's: (1) testimony that she was unaware of

71(b)(1)(A) (2006). "Divorce or separation instrument[s]" are defined to include "a decree of divorce or separate maintenance or a written instrument incident to such a decree." *Id.* § 71(b)(2)(A). Tax courts interpreting this statute have held that: (1) "payments made before the existence of a written divorce or separation instrument are not deductible by the payor spouse under section 215;" and (2) the retroactive deeming of payments as family support by state courts does not meet the requirements of section 71(b)(1)(A). *See Ali v. Commissioner*, T.C.M. (RIA) 2004–284 (2004); *see also Gordon v. Commissioner*, 70 T.C. 525, 530 (1978) ("[R]etroactive judicial determinations cannot cure defects in alimony arrangements under the Federal taxing statute, such as the absence of a written instrument at the time the payments were made.").

In the instant case, Plaintiff argues that section 71(b)(1)(A) is satisfied because the Settlement Agreement "reflected" the terms of a prior written agreement between himself and Ms. Morgan regarding spousal support. (Pl.'s Resp. at 8–13.) Somewhat inconsistently, Plaintiff also cites various case law purporting to show that section 71(b)(1)(A)'s requirement of payments under a written instrument is flexible. (*Id.*; *see also* Pl.'s Br. at 11–12.) For the following reasons, I am not persuaded.

First, Plaintiff acknowledges that he has no documentary evidence of the alleged prior written agreement between himself and Ms. Morgan except for the "reiteration" of this agreement in the Settlement Agreement. (Pl.'s Br., Ex. 5 at 9 [Rafferty Dep.].) By contrast, Defendant cites ample evidence suggesting that no such agreement existed. (*See* Def.'s Reply at 5–8.) For instance, Defendant points to Ms. Morgan's: (1) testimony that she was unaware of

any orders or agreements regarding spousal support which predated the California state court's October 15, 1993, order; and (2) her representation in a court filing that Plaintiff refused to sign a separation agreement negotiated in March and April of 1993. (*See* Def.'s Br., Ex. A-2 at 9–10 [Morgan Dep.], Ex. A-3 at 7 [7/2/93 Filing].) Defendant also argues that nothing in the Settlement Agreement indicates that it embodied the terms of a prior written agreement, and that the language of the agreement actually militates against such an interpretation because the agreement states: "[A]ll sums paid by [Plaintiff] to [Ms. Morgan] during the tax year 1993 . . . *shall be deemed* family support . . . ." (Def.'s Br., Ex. A-5 at 16–17 [7/6/94 Order] [emphasis added].) Finally, Defendant argues that the California state court's October 15, 1993, order is inconsistent with the existence of a prior written agreement regarding spousal support because this order recited: "[T]here shall be no payment of . . . spousal support at this time." (*Id.*, Ex. A-4 at 4 [10/15/93 Order].)

Given this overwhelming evidence, and Plaintiff's failure to produce any documentary proof of the alleged prior written agreement, I find that no reasonable fact-finder could conclude that the Settlement Agreement "reflected" the terms of such an agreement. If a litigant could prove the existence of a prior written agreement through his own uncorroborated oral testimony, then this requirement would effectively be moot. Alternatively, because Plaintiff argues that the alleged prior written agreement was executed in March or April of 1993, I find that, even assuming it existed, Plaintiff would be unable to prove that he paid $70,963 in spousal support to Ms. Morgan under such an agreement because, as indicated above, he could at best only establish eight months of payment from March to October 1993. (*See* Pl.'s Br., Ex. 5 at 10

[Rafferty Dep.].)  Based on the foregoing, I find there is no triable issue of fact as to whether the Settlement Agreement "reflected" the terms of a prior written agreement, and hold that any payments Plaintiff made to Ms. Morgan in 1993 cannot be deducted as spousal support because: (1) such payments predated any written divorce or separation instrument; and (2) the Settlement Agreement's retroactive deeming of these funds as family support does not meet the requirements of section 71(b)(1)(A). *Ali*, T.C.M. (RIA) 2004–284; *Gordon*, 70 T.C. at 530.

Second, I find Plaintiff's proffered cases ineffective to suggest that section 71(b)(1)(A)'s requirement of payments under a written instrument is flexible. Two of these cases merely hold that written agreements executed prior to formal divorce decrees constitute agreements incident to such decrees sufficient to support spousal support deductions. *See Hog v. Commissioner*, 13 T.C. 361 (1949); *Lerner v. Commissioner*, 195 F.2d 296 (2d. Cir. 1952). Nonetheless, because neither of these cases addressed (1) payments made *prior* to a written divorce or separation agreement, or (2) the retroactive deeming of payments as family support, neither is relevant to the case at bar. Two other cases merely hold that deductions under written agreements are valid even if a court later finds the agreements unenforceable under contract law. *See Richardson v. Commissioner*, 125 F.3d 551 (7th Cir. 1997); *Taylor v. Campbell*, 335 F.3d 841 (5th Cir. 1964). These cases are inapposite because Plaintiff cannot prove that he made spousal support payments to Ms. Morgan under *any* written agreement, enforceable or otherwise. Lastly, five of Plaintiff's proffered cases hold that: (1) spousal support deductions in years *subsequent* to a written agreement which embodies the terms of a prior oral agreement are permissible; (2) joint stipulations in open court as to the terms of a spousal support agreement may constitute a written

-13-

agreement; and (3) letters may constitute a written agreement. *See Fixler v. Commissioner*, 25 T.C. 1313 (1956); *Prince v. Commissioner*, 66 T.C. 1058 (1976); *Clark v. Commissioner*, 58 T.C. 519 (1972); *Campbell v. Commissioner*, 15 T.C. 355 (1950); *Jefferson v. Commissioner*, 13 T.C. 1092 (1949). None of these cases is relevant because none addresses: (1) payments made *prior* to a written divorce or separation agreement; or (2) the retroactive deeming of payments as family support.

### d. *Whether Plaintiff's Theory of Double-Taxation Has Legal or Factual Support*

Finally, Plaintiff contends that taxation of both his own alleged spousal support payments, and the amount of these payments included in the gross income on Ms. Morgan's 1993 tax return, constitutes inequitable double-taxation. (Pl.'s Resp. at 13–17.) Defendant counters that Plaintiff's theory of double-taxation is without legal or factual support. (*See* Def.'s Br. at 12–14; Def.'s Reply at 10–11.) For the following reasons, I agree with Defendant.

First, as a factual matter, Plaintiff has proffered not a scintilla of evidence suggesting that Ms. Morgan reported any portion of his alleged spousal support payments to her in 1993. (Pl.'s Resp. at 13–17.) Instead, his only basis for so contending is his own deposition testimony that he assumed Ms. Morgan reported such payments "because that was [their] agreement," and because Ms. Morgan is "very meticulous about following the letter of the agreements." (Pl.'s Resp. at 15; *see also* Def.'s Br., Ex. A-1 at 34–35 [Rafferty Dep.].) Plaintiff acknowledges that: (1) he cannot produce Ms. Morgan's 1993 tax return; and (2) Ms. Morgan never told him that she had reported such payments. (Def.'s Br., Ex. A-1 at 35 [Rafferty Dep.].) Ms. Morgan cannot recall what she reported on her return. (*Id.*, Ex. A-2 at 7 [Morgan Dep.].) Defendant has

been unable to locate a copy of this return, and Plaintiff never requested one from Defendant in discovery anyway. (*See* Def.'s Reply at 11 n.1.)

Based on this evidence, I find Plaintiff's assumption that Ms. Morgan reported his alleged payments to her to be purely speculative and insufficient to raise a triable issue of fact. *See Celotex*, 477 U.S. at 324 (requiring nonmovant to designate specific *facts* demonstrating a genuine issue for trial). As such, I find that Plaintiff cannot establish the factual predicate for his double-taxation claim.

Second, even assuming that Plaintiff could prove Ms. Morgan's reporting of $70,963 in spousal support payments, Plaintiff has still not cited any law suggesting that double-taxation of this amount entitles him to equitable relief. (*See* Pl.'s Resp. at 13–17.) Instead, Plaintiff cites a slew of cases from irrelevant jurisdictions reciting platitudinous statements about courts' discretion in fashioning equitable relief. (*See id.* at 14–15 [citing, *e.g.*, the New Hampshire Supreme Court for the proposition that "[c]ourts have broad discretion in adapting equitable relief to the circumstances and necessities of the case"].) None of these cases addresses tax law, much less Plaintiff's double-taxation theory. Defendant, by contrast, cites controlling authority that "an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." (*See* Def.'s Br. at 13; Def.'s Reply at 10 [quoting *Knight v. Commissioner*, 128 S. Ct. 782, 790 (2008) (further citations omitted)].) Plaintiff cannot satisfy this burden.

Based on Plaintiff's failure to demonstrate a triable issue of fact as to the factual predicate for his double-taxation theory, and his failure to cite a single case suggesting that this

theory is viable, I find that he has failed to designate specific facts showing a genuine issue for trial on any identifiable claim. *See, e.g.*, *Allen*, 119 F.3d at 839 (defining a "genuine" dispute as one which might lead a reasonable jury to return a verdict for the nonmoving party).

3. *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. DEFENDANT's motion (#36) is GRANTED.

2. PLAINTIFF's motion (#33) is DENIED.

The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims with prejudice. Defendants may have their costs by filing a bill of costs within eleven days of the date of this order.

Dated this 8th day of July, 2008.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge